UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| v. ) | No. 4:19 CR 755 HEA (JMB) |
| STEPHAN JONES, ) | |
|     Defendant. ) | |

**UNITED STATES OF AMERICA'S RESPONSE TO
DEFENDANT'S MOTION TO RECONSIDER THE DETENTION ORDER
AND FOR IMMEDIATE RELEASE**

The United States of America respectfully opposes Defendant Stephan Jones' Motion to Reconsider Bond Determination and for Immediate Release (Doc. # 96) for the following reasons:

**INTRODUCTION**

Defendant seeks reconsideration of the Court's detention order, which imposed pretrial detention because no conditions of release would assure the safety of the community and Defendant's appearance at future proceedings (Doc. # 21). *See* 18 U.S.C. § 3142(e). Critically, Defendant does not challenge the Court's determination that he poses a flight risk and danger to the community (Doc. # 21). Nor does he address the presumption that applies in favor of detention in this case (*see* Doc. # 6; 18 U.S.C. § 3142(e)). Rather, Defendant advances concerns about the spread of COVID-19 outside of the jail system and "crowded conditions" within to justify his immediate release on bond. Defendant has not identified any valid basis for this extraordinary relief.   In fact, jail administrators have implemented proactive measures to prevent the transmission of the virus. Additionally, given that Defendant's concerns about COVID-19 could and continue to be invoked by *any* pretrial detainee, granting release here would cause a flood of similar requests at a time when the justice system is already under strain from

1

the coronavirus outbreak. Accordingly, the Court should reject Defendant's efforts to unsettle its determination that pretrial detention is necessary in this case.

## RELEVANT FACTS

On September 19, 2019, Defendant was charged in a three-count indictment (Doc. #2). Defendant was specifically charged with (1) drug conspiracy, (2) conspiracy to possess a firearm in furtherance of drug trafficking, and (3) discharge of a firearm resulting in death (Id.). All three counts triggered the rebuttable presumption of detention with Count Three charging Defendant with a death-eligible offense.[1] The United States moved for Defendant's detention and filed a lengthy memorandum in support of its request (Doc. # 6).

On or about October 1, 2019, the pretrial services offices filed its report recommending that Defendant be detained based on its determination that no condition or combination of conditions would reasonably assure the appearance of the defendant as required and the safety of the community (Doc. # 13).[2] Faced with the United States' motion and memorandum, as well as the pretrial services report, Defendant waived the detention issue (Doc. # 21). This Court entered its detention order on October 3, 2019 (Id.).

Defendant now asks the Court for reconsideration of that detention order. In response, the pretrial services office again reviewed Defendant's situation and filed an additional report (Doc. #. 100). In it, the pretrial services officer again recommends Defendant's continued detention (Id.). Based upon all of the information in the record and available to this Court, Defendant's request should be swiftly denied.

---

[1] On or about January 10, 2020, the United States advised the Court and Defendant that it will not be seeking the death penalty against Defendant (Doc. # 67).

[2] The pretrial services report also contained detailed information about Defendant's health (Doc. # 13 p. 3). The United States will not detail that information in this pubic filing. However, the United States notes that the health information reported by Defendant to the pretrial services officer is wholly inconsistent with the newfound ailments Defendant is now presenting to the Court (*compare* Doc. # 13 p. 3 to Doc. #96 p. 2).

2

The Bureau of Prisons ("BOP") has been preparing for a potential COVID-19 outbreak since January 2020 by developing best practices to mitigate transmission. *See* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp. Effective March 13, 2020, BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *Id.* These measures include: (1) prohibiting all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers (with exceptions for medical treatment and other compelling reasons); (4) requiring staff health screening, including temperature checks; (5) implementing a variety of coronavirus-specific protocols for inmates, such as screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors (in addition to its routine infectious disease management program); and (6) modifying operations to maximize social distancing and to limit group gatherings. *Id.*

In the Eastern District of Missouri, the U.S. Marshals Service has recommended that all pretrial detention facilities follow the BOP's COVID-19 mitigation measures. Area detention facilities have already implemented a number of the recommended measures, including limiting visitors and taking prisoners' temperature prior to court appearances. Additionally, each detention facility has a protocol for responding to the medical issues, including transporting detainees to area hospitals in the unusual event they cannot provide in-facility care.

## LEGAL ANALYSIS

Defendant argues that one provision from the Bail Reform Act requires the Court to reconsider its detention order and grant him (Doc. # 96 p. 1 citing 18 U.S.C. § 3142(i)).[3] But, this provision does not allow for such extraordinary relief. Moreover, if the Court were to grant Defendant's release, it would open the floodgates to similar challenges from the hundreds of

---

[3]  In support of his motion, Defendant cites 18 U.S.C. § 3142(i) and two newspaper articles.

3

pretrial detainees in the Eastern District and quickly overwhelm both the Court and the Pretrial Services Office. Accordingly, the Court should deny Defendant's request for reconsideration and release.

I. **Section 3142(i) permits only the "temporary release" of pretrial detainees, and Defendant has failed to show that this extraordinary relief is necessary for his health or any other compelling reason.**[4]

Defendant argues that the Court can grant his release under section 3142(i). As an initial matter, the motion for reconsideration glazes over the limited nature of this provision, which provides for "temporary release" of pretrial detainees, not the indefinite "release on bail pending sentencing" Defendant requests. *See United States v. Avanetti*, No. 8:19-cr-00061-JVS, slip op. at 2 (C.D. Cal. Mar. 21, 2020) (ECF No. 121) (emphasizing this distinction in denying motion for reconsideration of bail); *see also Howard*, No. 4:19-cr-00148-ERW, slip op. at 2 (providing similar description of section 3142(i)). Moreover, Defendant does not qualify for even temporary release because he has not met his burden of showing that a release from detention is necessary to protect his health or for any other compelling reason. Thus, section 3142(i) does not provide a basis for reconsidering Defendant's detention or granting even a temporary release.

Section 3142(i) provides that a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[5] 18 U.S.C. § 3142(i). "A defendant has the burden of showing that temporary release is '*necessary . . .*' under Section 3142(i)." *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) (emphasis added); *see also United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (indicating that "temporary

---

[4]  Although not raised by his motion, concerns about COVID-19 do not justify reopening a detention hearing under section 3142(f) either because the recent outbreak does not have a "material bearing" on whether an individual poses a flight risk or a danger to the community.

[5]  To his credit, Defendant does not claim that temporary release is necessary for preparation of his defense, because it is not.

4

release under section 3142(i)" is warranted only "in extraordinary circumstances"). With respect to health conditions, "[t]his provision has been used sparingly" and only where absolutely necessary because care can no longer be managed by a detention facility. *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

While the outbreak of COVID-19 has created anxiety for many Americans, Defendant simply has not shown that even a temporary release from detention is necessary for his health. The motion for reconsideration raises only general concerns about coronavirus that apply equally to all pretrial detainees, if not the public at large (along with a sprinkle of newly discovered respiratory conditions). *See United States v. Fitzgerald*, No. 2:17-cr-00295-JCM-NJK, 2020 WL 1433932, at *1 (D. Nev. Mar. 24, 2020) ("Defendant's argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee."). "[W]here, as here, the record is devoid of particularized information supporting a finding that a 'compelling' reason exists to release Defendant under 18 U.S.C. § 3142(i), there is no basis to temporarily release Defendant." *Howard*, No. 4:19-cr-00148-ERW, slip op. at 2.

To the extent Defendant's newfound respiratory ailments are considered to be legitimate -- and there is no documentary evidence or any other information in the record to suggest that they are -- he has failed to demonstrate that his release from detention is necessary for either his health or obtaining adequate treatment for his condition.  For instance, Defendant does not claim that he has been exposed to the coronavirus. *See Hamilton*, 2020 WL 1323036, at *2 (finding that the COVID-19 pandemic did not constitute "a sufficiently compelling reason to justify release under [§ 3142(i)]" despite detainee's high risk for infection because "there have been no reported incidents of COVID-19 [at his facility] and [BOP] is taking system-wide precautions to mitigate the possibility of infection within its facilities."); *see also Dawson*, 2020 WL 1304557, at *2 (emphasizing similar absence of reported cases at detention facility). Given

5

that there are a number of confirmed cases in the St. Louis Area, it may well be safer for Defendant to shelter-in-place in the controlled environment at the Ste. Genevieve County detention facility—consistent with recent measures being implemented by local, state, and national authorities—than seeking release at this uncertain time and returning to the Saint Louis Metropolitan Area. *See United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011, at *1 n.1 (D. Md. Mar. 23, 2020) ("It is not at all clear that [releasing detainee to live with his family] would not pose a health risk to [the detainee] or the community"). And it certainly remains safer for the public for Defendant to remain in pretrial detention for the reasons this Court found in its detention order and those set forth in the United States' detention motion and memorandum.

      The motion for reconsideration also contains footnotes to two newspaper stories. Tellingly, Defendant does not offer *any* evidence that his continued detention at the Ste. Genevieve County detention facility will expose him to significant health risks.  This is plainly insufficient to meet his burden of showing that the extraordinary remedy of release from detention is necessary, particularly considering the preventative measures detention facilities like the Ste. Genevieve County detention facility have taken to mitigate the risks posed by the spread of COVID-19. *See United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, [inmate did] not show[] that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic . . . or that the facility is specifically unable to adequately treat [him]. . . . [T]he Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility . . . ."); *Martin*, 2020 WL 1274857, at *4 ("[W]hile the record confirms that [detainee] suffers from asthma, high blood pressure, and diabetes, this alone is insufficient to rebut the proffer by the Government that the correctional and medical staff . . . are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus.").

While the coronavirus outbreak is new, health claims by detainees are not. Courts have observed that "it is a rare case in which health conditions present an 'exceptional reason'" requiring release where detention is otherwise warranted. *See United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008). These cases also recognize that reasonably necessary treatments are available in prison, and often times, a prison setting will provide superior care than a defendant can obtain on the outside. *See United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In this case, Defendant simply has failed to show that his needs will not be met during his detention. Because Defendant has not demonstrated that his release from detention is necessary for his health or any other compelling reason, the Court must reject the motion for reconsideration or release under section 3142(i).

## II. Releasing pretrial detainees like Defendant would unduly burden the courts, the Pretrial Services Office, and a justice system already under strain from COVID-19.

In his request for relief, Defendant claims that the Court should grant his immediate release on bond.  Interestingly, Defendant seeks "temporary release" under 18 U.S.C. § 3142(i) "pending sentencing."  That sounds far from temporary.  Beyond overlooking the fact that this Court already determined that no conditions of release would be adequate to address its concerns about Defendant's flight risk and/or danger to the community, profound consequences underlie his request for reconsideration. Releasing pretrial detainees like Defendant not only would endanger the community but would impose significant burdens on the justice system, which is already facing other challenges related to the COVID-19 outbreak. For example, detainees who are released would require some form of monitoring by Pretrial Services Office, in addition to the hundreds of defendants in the Eastern District who are already under

supervision.[6] *See United States v. Robinson*, No. 4:20CR23 SRC (NAB), slip op. at 3 (E.D. Mo. Mar. 26, 2020) (ECF No. 26) (rejecting request for release in part because "the coronavirus pandemic and the state and national measures that have been put in place in response to it have rendered pretrial supervision more challenging today than when [defendant] was first ordered detained"). Similarly, the Court would be inundated by requests from other detainees seeking pretrial release. *See United States v. Jackson*, No. 18-216, 2020 WL 1445958, at *2 (W.D. Penn. Mar. 24, 2020) (emphasizing concern that "many other defendants would flood the courts with similar requests"). Countless defendants could make the generic argument, now being raised by Defendant, that they should be released due to fears over the coronavirus.  Thus, to the extent the Court concludes that the Bail Reform Act allows Defendant to relitigate the issue of detention, it should be mindful of these practical consequences in determining whether to grant Defendant's request for immediate release on bond.

---

[6] Before a Defendant is placed on release, a Pretrial Services Officer also must vet the proposed residence and meet the proposed third-party custodian and other residents who live there. New release orders would force these Officers to conduct a substantial amount of *in-person, in-home* meetings, exposing them to a heightened risk of infection. "Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel . . . ." *United States v. Hearns*, No. 1:20-CR-110, 2020 WL 1493747, at *4 (N.D. Ohio Mar. 27, 2020).

## **CONCLUSION**

For the foregoing reasons, the United States of America respectfully requests that this Court deny Defendant's Motion to Reconsider Bond Determination and for Immediate Release. *See Dawson*, 2020 WL 1304557, at *1; *Gileno*, 2020 WL 1307108, at *4; *Hamilton*, 2020 WL 1323036, at *2; *Howard*, No. 4:19-cr-00148-ERW, slip op. at 2; *Jefferson*, 2020 WL 1332011, at *2; *Jones*, 2020 WL 1323109, at *1; *Martin*, 2020 WL 1274857, at *1; *Robinson*, No. 4:20CR23 SRC (NAB), slip op. at 3.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

 /s/ Thomas Rea
THOMAS REA #53245MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

 /s/ Thomas Rea